# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2750

_____

Flandreau Santee Sioux Tribe, a Federally-recognized Indian tribe

*Plaintiff - Appellee*

v.

Josh Haeder, Treasurer of the State of South Dakota, et al.[*]

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: February 13, 2019
Filed: September 6, 2019

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

In this case, as in <u>Flandreau Santee Sioux Tribe v. Noem</u>, No. 18-1271, also decided today, we are called upon to determine whether a South Dakota tax on

_____

[*]We grant the State's motion to substitute Treasurer Josh Haeder, Secretary of Revenue James Terwilliger, and Governor Kristi Noem, in their official capacities, in place of former Treasurer Richard Sattgast, former Governor Dennis Daugaard, and former Secretary of Revenue Andy Gerlach.

nonmember activity on the Flandreau Indian Reservation in Moody County, South Dakota is preempted by federal law. South Dakota imposes a 2% excise tax on the gross receipts of a contractor if its services "entail the construction, building, installation, or repair of a fixture of realty" within the State. S.D.C.L. 10-46A-1. The issue is whether federal law preempts imposition of this statewide tax on the gross receipts of a nonmember contractor for services performed in renovating and expanding the Flandreau Santee Sioux Tribe's gaming casino located on the Reservation. The State appeals the district court's grant of summary judgment in favor of the Tribe. We review the grant of summary judgment *de novo*, and the facts in the light most favorable to the State, the non-moving party. See Casino Res. Corp. v. Harrah's Entm't, Inc., 243 F.3d 435, 437 (8th Cir. 2001) (standard of review). We conclude on the summary judgment record that the tax is not preempted and therefore reverse.

## I. Background.

The Tribe owns and operates the Royal River Casino & Hotel (the "Casino") on the Reservation, where it conducts "Class III gaming" such as table games and slot machines. As required by the federal Indian Gaming Regulatory Act ("IGRA"), the Tribe and the State entered into a gaming compact that provides the terms under which the Tribe is authorized to conduct Class III gaming at the Casino. See 25 U.S.C. § 2710(d). The Casino, opened in 1990 and relocated in 1997, operates in a building that houses a gaming floor, a hotel, a restaurant, a bar, a gift shop, a snack bar, and a live entertainment venue.

The Tribe planned and has partially implemented a $24 million renovation and expansion of the Casino, in part to compete with a newer, larger casino that opened nearby in 2011. To this end, the Tribe and the State agreed to double the number of slot machines allowed under the gaming compact. In October 2015, the Tribe contracted with a nonmember construction company, Henry Carlson Company, to

carry out the planned renovation. It is undisputed that the Henry Carlson Company's construction services under this contract would be subject to the 2% excise tax if not performed on an Indian reservation. Cf. Valley Power Sys. v. S.D. Dep't of Revenue, 905 N.W.2d 328, 331 (S.D. 2017). The compact between the Tribe and the State is silent as to whether the State may impose the excise tax on a nonmember contractor performing construction services on the Casino's realty.

Construction on the Casino project began in December 2016. Certain construction projects within Indian country, such as construction of schools and tribal government buildings, are exempt from the excise tax, based on a project-by-project analysis by the South Dakota Department of Revenue using criteria developed by the State from federal preemption decisions. Henry Carlson Company twice requested an exemption for the Casino renovation project. Both requests were denied by the Department of Revenue, which does not grant exemptions for nonmember contractor work on "commercial" projects such as a casino. Henry Carlson Company then remitted the excise tax under protest and requested that the State refund the tax to the Tribe. See S.D.C.L. 10-27-2. When the State denied the request, the Tribe filed this action in April 2017, seeking declaratory relief, an injunction, and a refund of the tax paid under protest.[1]

Ruling on the parties' cross-motions for summary judgment, the district court concluded that IGRA expressly preempts the state excise tax for two reasons: (i) The federal statute comprehensively regulates gaming activity on tribal lands to provide tribes with revenue and to promote tribal self-sufficiency, and it requires a tribal

---

[1]Though it is undisputed that the legal incidence of this excise tax falls on the contractor, not on the Tribe as project owner, the tax is listed as a separate item on Henry Carlson Company's invoices and thus in substance is paid by the Tribe. The State does not contend the Tribe is not a proper plaintiff here. However, the Tribe dismissed without prejudice its claim for refund of the tax paid by the Henry Carlson Company based on the State's claim of Eleventh Amendment immunity.

resolution for the construction and maintenance of the gaming facility that is subject to approval by the Chairman of the National Indian Gaming Commission ("NIGC"), see 25 U.S.C. § 2710(2)(E). (ii) The Casino renovation project is "directly related" to Class III gaming within the meaning of 25 U.S.C. § 2710(d)(3)(C)(vii) because "without the construction project, the Tribe would be unable to operate its gaming activities." As the Tribe's compact with the State does not authorize the excise tax, it is preempted by 25 U.S.C. § 2710(d)(4). Alternatively, the court held that the tax is preempted under the balancing test set forth in White Mountain Apache Tribe v. Bracker, 448 U.S. 136 (1980), because it "infringes on the Tribe's ability to govern itself" and there is no "nexus between any services the State provides to the Tribe or the contractor and the imposition of the excise tax."

## II. Discussion.

The analysis begins with Part I of our opinion in Flandreau Santee Sioux Tribe v. Noem, No. 18-1271, slip op. at 4-13, which is hereby incorporated by reference. Because the legal incidence of the excise tax falls on the nonmember contractor, not on the Tribe, the tax is not *per se* invalid. See Okla. Tax Comm'n v. Chickasaw Nation, 515 U.S. 450, 453 (1995). Therefore, a particularized inquiry is required to determine whether federal interests as expressed in IGRA outweigh the State's interest in taxing nonmember Henry Carlson Company for its work on the Casino's realty. See Ramah Navajo School Bd., Inc. v. Bureau of Revenue of N.M., 458 U.S. 832, 838 (1982) ("Pre-emption analysis in this area is not controlled by mechanical or absolute conceptions of state or tribal sovereignty; it requires a particularized examination of the relevant state, federal, and tribal interests."). Determining whether federal legislation has preempted state taxation of nonmember activity on Indian land is "primarily an exercise in examining congressional intent." Cotton Petroleum Corp. v. New Mexico, 490 U.S. 163, 176 (1989).

In Noem, we concluded that the district court erred in ruling that imposing the South Dakota use tax on amenities sold to nonmember customers of the Casino was *expressly* preempted by IGRA. For the most part, our reasoning in Noem establishes that the district court likewise erred in concluding that the State's excise tax on nonmember construction contractors is expressly preempted:

-- As we explained in Noem, 25 U.S.C. § 2710(d)(4) does not preempt state taxation of nonmember activities on a reservation, other than Class III gaming activity, which the Supreme Court has defined as "what goes on in a casino." As to other state taxes, subsection (d)(4) is a lack of authorization, not a prohibition. "Congress chose to limit the scope of IGRA's preemptive effect to the governance of gaming." Mashantucket Pequot Tribe v. Town of Ledyard, 722 F.3d 457, 473 (2nd Cir. 2013) (upholding imposition of Connecticut's personal property tax on nonmember lessors of slot machines used by the tribe at its on-reservation casino).

-- the construction contractor excise tax, like the use tax at issue in Noem, is not expressly preempted by IGRA's so called "catchall provision" in 25 U.S.C. § 2710(d)(3)(C)(vii). First, "directly related to the operation of gaming activities," as construed by the Supreme Court in Michigan v. Bay Mills Indian Cmty., 572 U.S. 782, 792 (2014), is a narrower term than directly related to casino operations. See Navajo Nation v. Dalley, 896 F.3d 1196, 1207 (10th Cir. 2018) ("Class III gaming activity relates only to the activities actually involved in the *playing* of the game, and not activities occurring in proximity to, but not inextricably intertwined with, the betting of chips, the folding of a hand, or suchlike."). Thus, the district court erred in concluding that casino construction and renovation falls within and is preempted by the catchall provision simply because, "without the construction project, the Tribe would be unable to operate its gaming activities."

Second, the absence of a compact provision addressing the State's contractor gross receipts tax does not evidence congressional intent to preempt state taxation of

-5-

the gross receipts of nonmember construction companies renovating tribal casinos. The catchall provision lists subjects that a compact *may* include; it does not address the legal effect of non-inclusion. Third, we agree with the Ninth Circuit that, if "IGRA itself preempts the state taxation of non-Indian contractors working on tribal territory, we would effectively ignore <u>Bracker</u> and its progeny." <u>Barona Band of Mission Indians v. Yee</u>, 528 F.3d 1184, 1193 (9th Cir. 2008).

In concluding that IGRA expressly preempts imposing the contractor excise tax, the district court also relied on another IGRA provision not at issue in <u>Noem</u> -- the requirement that a tribe engaging in Class III gaming must adopt, and the Chairman of the NIGC must approve, a resolution that provides that "the construction and maintenance of the gaming facility, and the operation of that gaming is conducted in a manner which adequately protects the environment and the public health and safety." 25 U.S.C. § 2710(b)(2)(E). The district court concluded that this provision expressly preempts the State's excise tax on nonmember contractors working on the Casino's realty, like the "comprehensive and pervasive" federal regulation of tribal logging on federal trust lands in <u>Bracker</u>, 448 U.S. at 148-50, and of Indian school construction and operation in <u>Ramah</u>, 458 U.S. at 839-42. We disagree.

Other than requiring NIGC approval of a tribal ordinance stating that Casino construction will adequately protect the environment and public health and safety, the Commission does not actively regulate construction activity or prescribe what adequate protection of public health and safety requires. <u>See</u> 25 C.F.R. §§ 559.1-559.7; 25 C.F.R § 522.4(b)(7). Rather, consistent with IGRA's purpose to promote tribal self-sufficiency, NIGC leaves the management of casino construction to the tribes. The summary judgment record establishes that the NIGC has had no involvement to date in the Casino renovations at issue. We conclude that this IGRA provision does not expressly nor by plain implication preempt the State's contractor excise tax, a tax which does not regulate or interfere with the Tribe's design and completion of the construction project, or its conduct of Class III gaming. "IGRA is

-6-

a gambling statute, not a code governing construction contractors, the legalities of which are of paramount state and local concern." Yee, 528 F.3d at 1192.

Thus, as in Noem, the issue in this case turns upon whether imposition of the excise tax on nonmember contractors for construction services performed on the Reservation is preempted under the Bracker balancing test. In conducting this analysis, we focus on "the extent of federal regulation and control, the regulatory and revenue-raising interests of states and tribes, and the provision of state or tribal services." Felix S. Cohen, Handbook of Federal Indian Law 707 (2012), citing Cotton, 490 U.S. at 176-77, 186-90; Cent. Mach. Co. v. Ariz. State Tax Comm'n, 448 U.S. 160, 161-63 (1980); and Bracker, 448 U.S. at 150-51. Federal policies reflected in IGRA and the history of tribal independence with respect to gaming, to the extent they are implicated, may preempt the tax unless the State's interest in applying the tax to Henry Carlson Company's work on the Casino is sufficient to overcome them. See New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 334 (1983). The district court concluded that Bracker balancing tips in favor of preemption. We disagree.

The federal and tribal interests at issue are expressed in IGRA -- "promoting tribal economic development, self-sufficiency, and strong tribal government," "ensur[ing] that the Indian tribe is the primary beneficiary of the gaming operation," and "protect[ing] such gaming as a means of generating tribal revenue," 25 U.S.C. § 2702 -- and in the "history of tribal independence" in the operation of on-reservation gaming as recounted in California v. Cabazon Band of Mission Indians, 480 U.S. 202 (1987), the Supreme Court decision that prompted Congress to enact IGRA the following year. Unlike the ongoing use tax on Casino amenities at issue in Noem, the generally applicable excise tax is a one-time tax on nonmember contractor construction services in expanding and renovating the Casino's realty, some of which are performed off the reservation. This tax hardly implicates the relevant federal and tribal interests.

Most significantly, the Tribe has presented no evidence that imposition of the contractor excise tax for Henry Carlson Company's work on the Casino project will impede the Tribe's ability to conduct its Class III gaming activities to generate gaming revenue. To be sure, revenues from the Casino are of great financial importance to the Tribe. In 2016 and 2017, the Casino enterprise generated roughly 40% of the Tribe's budget and more than 90% of its yearly sales tax revenue. The burden of the State's contractor excise tax pales in comparison. The projected total tax that would be paid when the Casino's renovation is completed is $480,000. While substantial, that is only a small percentage of the gross Casino revenues generated in 2016 and 2017 alone. Absent a showing that the effect of this one-time tax on construction would be to reduce the demand for the Casino's commercial activities, this indirect financial burden is "simply too indirect and too insubstantial to support [the Tribe's] claim of preemption." Cotton, 490 U.S. at 187; see Mashantucket Pequot Tribe v. Town of Ledyard, 722 F.3d 457, 473-74 (2nd Cir. 2013). The Tribe "cannot invalidate the [South Dakota] tax by complaining about a decrease in revenues." Wagnon v. Prairie Band Potawatomi Nation, 546 U.S. 95, 114 (2005), citing Washington v. Confederated Tribes of Colville Indian Reservation, 447 U.S. 134, 156 (1980). The additional federal interests reflected in IGRA and in the history of tribal independence -- promoting strong tribal government and ensuring tribal control of gaming operations in Indian country -- are not implicated by an excise tax that does not regulate Casino construction or gaming activities.

These rather minimal federal and tribal interests must be balanced against the State's significant interest in raising revenue for its general fund to provide services to residents including the Henry Carlson Company, see Colville, 447 U.S. at 157; and its "separate sovereign interest in being in control of, and able to apply, its laws throughout its territory," Ledyard, 722 F.3d at 476, citing Cotton, 490 U.S. at 188.

The State's "legitimate interest in raising revenues for essential government programs" is "strongest when the tax is directed at off-reservation value and when the

taxpayer is the recipient of state services." Colville, 447 U.S. at 157. Therefore, the Tribe argues, this interest must be heavily discounted because the Casino's gaming activities provide on-reservation value, and none of the many services that South Dakota provides residents from its general fund have "a nexus between the taxed activity and the government function provided." Yee, 528 F.3d at 1193. For the most part, this is true. But "the relevant services provided by the State include those that are available to the [contractor] and the members of the Tribe off the reservation as well as on it." Cotton, 490 U.S. at 189. And the State also has an interest in being able to apply its generally applicable excise tax throughout its territory. See Ledyard, 722 F.3d at 475-76. Thus, the absence of a more specific nexus, while relevant, is not a controlling factor.

Because the Tribe has failed to show that the tax has more than a *de minimis* financial impact on federal and tribal interests, as in Ledyard, 722 F.3d at 476-77, the State's legitimate interests in raising revenues for essential government programs that benefit the nonmember contractor-taxpayer in this case, as well as its interest in being able to apply its generally applicable contractor excise tax throughout the State, are sufficient to justify imposing the excise tax on Henry Carlson Company's construction services performed on the Casino's realty.

For the foregoing reasons, the judgment of the district court and the order granting summary judgment in favor of the Tribe on its first, second, and third claims are reversed. We grant the State's motion to dismiss the State Treasurer and remand the case for further proceedings not inconsistent with this opinion.

COLLOTON, Circuit Judge, concurring in the judgment.

Although I do not join the lead opinion and its incorporation of the analysis in *Flandreau Santee Sioux Tribe v. Noem*, No. 18-1271, from which I dissent, I concur in the judgment here: The South Dakota excise tax on gross receipts of a non-Indian

contractor for services performed on the Tribe's casino is not preempted. The decisions in *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980), and *Ramah Navajo School Board, Inc. v. Bureau of Revenue of New Mexico*, 458 U.S. 832 (1982), striking state taxes are not controlling in this context. There is no comprehensive and pervasive federal regulatory scheme of casino construction that precludes state taxation. *See ante*, at 6-7. That sort of federal regulation was essential to decisions in *Bracker*, 448 U.S. at 148, 151 n.15, and *Ramah*, 458 U.S. at 839, 844 n.8; without it, the Tribe's preemption argument has little force. This case also does not exhibit "complete abdication or noninvolvement of the State in the on-reservation activity," *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 185 (1989), for the State licenses architects and engineers working on the construction project, R. Doc. 33-11, at 9-15; R. Doc. 33-40, at 2-3; R. Doc. 69-21, at 7, 19; R. Doc. 72, at 14 (¶¶ 81-82); R. Doc. 80-13, at 11-12, issues permits for and conducts inspections of electrical work on the project, R. Doc. 33-36, at 2-3; R. Doc. 69-14, at 4-5, and may approve a paving-mix manufacturer for the project. R. Doc. 33-11, at 12; R. Doc. 72, at 16 (¶ 88); R. Doc. 72-11, at 3 (¶ 1.6(A)). There is no evidence that the excise tax "will impede the Tribe's ability to conduct its Class III gaming activities to generate gaming revenue," *ante*, at 8, and any effect on federal Indian gaming policy is too indirect and too insubstantial to justify a finding of preemption in any event. *See Cotton Petroleum*, 490 U.S. at 187. I thus concur in the judgment reversing the grant of summary judgment for the Tribe on its first, second, and third claims, granting the motion to substitute, granting the motion to dismiss the State Treasurer, and remanding for further proceedings.

KELLY, Circuit Judge, dissenting.

I agree with the court that IGRA does not expressly preempt the application of South Dakota's excise tax in this case. But in my view, the tax is impliedly preempted under the balancing test articulated by the Supreme Court in Bracker, 448 U.S. 136. Consistent with our opinion in the companion case, see Flandreau Santee

Sioux Tribe v. Noem, No. 18-1271, slip op. at 9–12, I would conclude that the state's generalized interest in raising revenue does not outweigh the relevant federal and tribal interests.

In Noem, we faithfully applied Bracker to hold that (1) South Dakota's interest in collecting a use tax from the Casino's patrons was merely a "generalized interest in raising revenue," and (2) this interest did not outweigh the federal and tribal interests at stake. Slip op. at 11; see Bracker, 448 U.S. at 150. That analysis should control here. South Dakota's interest in collecting the excise tax from the contractor here is just as generalized as its interest in collecting the use tax was in Noem. Both taxes fund the state's general treasury; there is no evidence that South Dakota uses the revenues from either tax to provide any particular services to the Tribe or the Casino.[2] South Dakota therefore lacks any "specific, legitimate regulatory interest" in the activity covered by the excise tax—construction of casino facilities on tribal lands. Ramah, 458 U.S. at 843; see Noem, slip op. at 11; cf. Colville, 447 U.S. at 157 ("The State['s] . . . interest in raising revenues . . . is . . . strongest when the tax is directed at off-reservation value and when the taxpayer is the recipient of state services."). Whatever off-reservation benefits the state confers on the contractor, those benefits cannot "justify a tax imposed on the construction of [Casino] facilities on tribal lands pursuant to a contract between the tribal organization and the non-Indian contracting firm." Ramah, 458 U.S. at 843–44.

In both Noem and this case, the Tribe has a competing interest in retaining the tax revenue and using it to promote tribal self-sufficiency through operation of the Casino. If anything, that interest is most salient here where the tax applies directly to the construction of additional gaming areas in the Casino. It is undisputed that the

_____

[2]The record reveals only one instance of South Dakota providing services related to the Tribe's construction project: electrical inspections and permits. The excise tax would not fund those services; the Tribe's electrical contractor paid separate fees to the state covering those costs.

-11-

Tribe's expansion and renovation project was a "necessary expense" to compete with a newer nearby casino that reduced the Tribe's gaming revenues. Flandreau Santee Sioux Tribe v. Sattgast, 325 F. Supp. 3d 995, 1003 (D.S.D. 2018). Those gaming revenues supply roughly 40% of the Tribe's annual budget, supra at 8, and the expansion project was needed to keep the Casino profitable. The court acknowledges that the cost of this tax to the Tribe—$480,000—is "substantial" but then characterizes it as "too insubstantial to support the Tribe's claim of preemption." Id. (cleaned up). In my view, the first characterization is correct; the Tribe's interest in retaining this $480,000 is substantial, and it outweighs the state's interest in raising additional revenue for its general fund.[3]

Federal interests, although not strong, further weigh in the Tribe's favor. Federal regulation of the Casino's construction may not be "comprehensive and pervasive," see Ramah, 458 U.S. at 839, but it does exist. The NIGC Chairman plays a role in ensuring that "the construction and maintenance of the gaming facility . . . adequately protects the environment and the public health and safety." See 25 U.S.C. § 2710(b)(2)(E), (d)(1)(A). And the federal government shares the Tribe's interest in "promoting tribal self-sufficiency and economic development," which is furthered through operation of a commercially successful Casino. Bracker, 448 U.S. at 143; see 25 U.S.C. § 2702(1).

---

[3]The court compares the one-time payment of $480,000 to the Tribe's combined gross casino revenues between 2016 and 2017. Of course, gross revenue does not account for all of the costs of operating the Casino; those expenses reduced the Casino's operating revenue by nearly 80% over those two years. Nor does it account for the Tribe's $24 million investment in the renovation project. In context, this $480,000 surely means more to the Tribe than to South Dakota, which has an annual budget of over $4 billion.

As in <u>Noem</u>, I would conclude that federal and tribal interests outweigh the state's general interest in raising revenue through collection of this tax. I would accordingly affirm the district court's judgment.

_____